IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| CHRISTINE DENISE ALESSANDRINI,<br><br>　　　　　　Plaintiff,<br><br>　v.<br><br>GWYNEDD CLUB CONDOMINIUM ASSOCIATION; MID-ATLANTIC MANAGEMENT CORPORATION; CAROL PAOTE, President of Gwynedd Club Condominium Association Executive Board; and JOHN BITTNER, Secretary of Gwynedd Club Condominium Association Executive Board,<br><br>　　　　　　Defendants. | CIVIL ACTION<br>NO. 16-0968 |

**MEMORANDUM**

**SCHMEHL, J.  /s/ JLS**　　　　　　　　　　　　　　　　　　　　　　　December 19, 2016

　　　　Plaintiff, who has ongoing related bankruptcy proceedings, also was delinquent in money owed to her Condominium Association. As a result, Defendants took issue with Plaintiff's use of the shared pool facility, which led to altercations and calls to the police. The Court will dismiss some of the counts and refer the remaining claim, regarding violation of the bankruptcy stay, to the bankruptcy court.

　　　　This case originated as an adversary action in bankruptcy court. Defendants filed a motion to withdraw the reference and transfer the case to this Court. Plaintiff did not oppose the motion, and this Court granted it. After some issues with failure to file the withdrawal motion before the bankruptcy court and associated delays in responding to the complaint, this Court held a Rule 16 pretrial conference. At the conference, counsel and the Court discussed the possibility of sending the case back to the bankruptcy court;

Plaintiff planned to file a motion to that effect, and Defendants would determine whether or not they opposed the motion. In the meantime, the Court would not issue an order scheduling discovery or further proceedings in this matter.

Plaintiff indeed filed a motion to refer the case back to the bankruptcy court. Rather than simply opposing or agreeing, Defendants filed a motion for judgment on the pleadings as to counts two and three, claims for invasion of privacy and civil rights violations, but otherwise did not oppose referral to bankruptcy of the remaining claim, for violation of the bankruptcy stay. Subsequently, Plaintiff filed a letter requesting a Rule 16 conference. As noted, the Court already held a conference and delayed entering a scheduling order pending the possible return to bankruptcy court, but Plaintiff's desire to move the case forward is understandable. The Court herein addresses both Plaintiff's motion to refer the matter to bankruptcy and Defendants' motion for judgment on the pleadings as to certain counts.

According to the complaint, Plaintiff filed a bankruptcy petition on May 25, 2015, and the automatic stay of debt collection under 11 U.S.C. § 362(a) took effect the same day. Plaintiff apparently resides in a condo unit under the purview of Defendant Gwynedd Club Condominium Association, which was listed as a secured creditor in the petition based on a foreclosure action. Plaintiff alleges that all Defendants were effectively aware of the bankruptcy filing.

On May 31, 2015, Plaintiff was in the condo community swimming pool area. Defendant Carol Paote, the condo board president, told Plaintiff, in front of other condo residents, that she was not allowed in the pool area because she owed the condo association money. Paote threatened to fine Plaintiff, who responded that she had filed

for bankruptcy. A short while later, allegedly responding to a call from Paote, two local police officers arrived and asserted that Plaintiff was trespassing. After talking with her lawyer, Plaintiff asked the police what they would do if she did not leave the pool area; the police answered, "nothing," and left.

On June 7, 2015, Defendants Paote and John Bitner, the condo board secretary, blocked Plaintiff from entering the pool area. Again in front of neighbors, these Defendants announced that Plaintiff could not use the pool because she owed the association $14,000. Plaintiff again contacted her attorney, who advised that this time *Plaintiff* should call the police. After the attorney notified the police of the bankruptcy, two officers arrived and enabled Plaintiff to enter the pool area.

Defendants also sent Plaintiff a letter dated June 4, 2015, noting that Plaintiff and guests had used the pool on several occasions and stating that because her account was delinquent, Plaintiff could not use the communal facilities or enjoy several other benefits of condo association membership. Further, Defendants sent Plaintiff five monthly account statements allegedly requesting payment of debts and late fees.

Based on these facts, Plaintiff brings three claims. Count I alleges violations of the automatic stay, arguing that the letter, account statements, and attempts to prevent Plaintiff from using the pool without paying off her delinquent account constitute prohibited attempts to collect debts. Count II asserts a cause of action for invasion of privacy based on the statements about Plaintiff's debts in front of her condo neighbors. Count III claims a civil rights violation, apparently based on Defendants' involvement of the police in blocking her rightful access to the pool area. Plaintiff has filed a motion to refer all counts to bankruptcy court. Defendants have responded by moving for judgment

on the pleadings, asking this Court to dismiss Counts II and III before referral; Plaintiff has filed no substantive response to Defendants' arguments, submitting only a one-paragraph response arguing that Counts II and III should be referred to bankruptcy court along with Count I and decided there.

Both sides' positions on whether Counts II and III should be referred to bankruptcy are rather conclusory. Plaintiff asserts they are core to the bankruptcy proceedings because they arise in connection with the bankruptcy filing and involve the same events as the claims of stay violations under Count I. Defendants simply state that they are non-core. Of course, whether the claims are core or non-core does not fully determine where they may or should be heard. The bankruptcy court may make final decisions on core claims but also hear and propose findings on non-core claims, while both core and non-core claims are ultimately under the jurisdiction of this Court, which *may* refer them to the bankruptcy court. *See In re Guild & Gallery Plus, Inc.*, 72 F.3d 1171, 1177–78 (3d Cir. 1996). So even if the claims are core, this Court can rule on Defendants' motion for judgment on the pleadings before referring the case to bankruptcy. Further, it is not clear that Counts II and III actually do "arise only in the context of a bankruptcy case." *Id.* at 1178 (quoting *In re Marcus Hook Dev. Park Inc.*, 943 F.2d 261, 267 (3d Cir. 1991)). The invasion of privacy claim involves Defendants' public statements about Plaintiff's debts, not the bankruptcy filing, and Defendants likewise called the police because they believed Plaintiff's delinquency—which existed without the bankruptcy filing—barred her from using the pool. Thus Counts II and III do not depend on the bankruptcy, and this Court will rule on their dismissal prior to referral.

Defendants argue that Count II, the invasion of privacy claim, fails primarily because Plaintiff's bankruptcy is a matter of public record. This is a slight mischaracterization of the situation: as noted just above, the complaint alleges that Defendants publicized not the bankruptcy filing, but rather Plaintiff's debt to the condo association. Nevertheless, as the complaint also notes, the debt to the condo association is itself listed on the publically available petition documents. Defendant's argument that Plaintiff's debt to the association is an issue of legitimate concern to fellow condo residents is also well taken. In light of Plaintiff's very thin allegations, the exceedingly minimal conceivable harm if any, the already public and truthful nature of the information at issue, the neighbors' valid interest in the information, and the lack of substantive response by Plaintiff, the Court credits Defendants' arguments and will dismiss Count II.

As to Count III, concerning a civil rights violation, Defendants argue that Plaintiff has not identified any right of which she was deprived and that Defendants are not state actors. But the Court is willing to entertain claims that private individuals who call in law enforcement to intervene on their behalf in disputes about private property may be acting under color of law. *See Schmitt v. Farruggio*, No. CIV.A. 13-2007, 2014 WL 4055835, at *3 (E.D. Pa. Aug. 14, 2014) (analyzing a similar claim under the framework of *Fuentes v. Shevin*, 407 U.S. 67 (1972), and *Abbott v. Latshaw*, 164 F.3d 141 (3d Cir. 1998), which prohibit state actors from aiding one side of a dispute over property without prior hearing, and *Lugar v. Edmondson Oil Co., Inc.*, 457 U.S. 922, 941 (1982), which recognizes that "a private party's joint participation with state officials in the seizure of disputed property is sufficient to characterize that party as a 'state actor' for purposes of the Fourteenth

Amendment"). Further, intervention by police that prevents a party's rightful use of property, such as a citation for trespass, constitutes a seizure of the party's rights in the property. *Id.* The real problem in this case is that the police did not actually do anything to interfere with Plaintiff's rights. Although they initially stated that Plaintiff was trespassing, they readily admitted they would take no action against Plaintiff and then walked away. During the second incident, the police actually intervened on *Plaintiff's* behalf (which was probably not improper because Plaintiff's attorney provided them with the bankruptcy information). Therefore, this claim has no substance and will be dismissed.

All that remains is Count I. Neither party opposes referral of that claim back to bankruptcy court, which the Court will therefore order.